UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **JOHN W. VINYARD**, | Case No. 3:12-cv-00020-SI |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| **CAROLYN W. COLVIN**,[1] | |
| Acting Commissioner of Social Security, | |
| Defendant. | |

Bennett P. Dalton, 1419 Seventh Street, Oregon City, OR 97045. Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; David Morado, Regional Chief Counsel, Region X, and Terrye E. Shea, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Attorneys for Defendant.

---

[1] After the filing of the Complaint in this case, the term of Michael J. Astrue, the originally named defendant Commissioner of Social Security, expired and, thus, the name of the current acting Commissioner has been substituted in the caption.

**SIMON, District Judge**.

John W. Vinyard seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Because the Commissioner's decision is not supported by substantial evidence, the decision is remanded for further administrative proceedings.

## BACKGROUND

### A.  The Application

Mr. Vinyard protectively filed an application for SSI and DIB on June 9, 2008, alleging disability beginning on September 1, 2005. Tr. 176-83. He alleges disability due to ankylosing spondylitis, fused disks, and arthritis. Tr. 200. The Commissioner denied his application initially and upon reconsideration; thereafter, he requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 91-94. After an administrative hearing, held on March 4, 2011, the ALJ found Mr. Vinyard to be not disabled. Tr. 8-20, 67-88. The Appeals Council denied Mr. Vinyard's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-4. Mr. Vinyard now seeks judicial review of that decision.

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each

Page 2 – OPINION AND ORDER

step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step

sequential process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R.
§§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving
significant mental or physical duties done or intended to be done for pay
or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing
such work, she is not disabled within the meaning of the Act. 20 C.F.R.
§§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing
substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's
regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless
expected to result in death, an impairment is "severe" if it significantly
limits the claimant's physical or mental ability to do basic work activities.
20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted
or must be expected to last for a continuous period of at least 12 months.
20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe
impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii);
416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis
proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the
impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii);
416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
the listed impairments, the analysis proceeds beyond step three. At that
point, the ALJ must evaluate medical and other relevant evidence to assess
and determine the claimant's "residual functional capacity" ("RFC"). This
is an assessment of work-related activities that the claimant may still
perform on a regular and continuing basis, despite any limitations imposed
by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c);
416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC,
the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC
assessment? If so, then the claimant is not disabled. 20 C.F.R.
§§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform
his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience,
is the claimant able to make an adjustment to other work that exists in

> significant numbers in the national economy? If so, then the claimant is
> not disabled. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c);
> 416.960(c). If the claimant cannot perform such work, he or she is
> disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; see also 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

The ALJ performed the sequential analysis in his April 27, 2011 decision. Tr. 8-20. At step one, the ALJ found that Mr. Vinyard did not engage in substantial gainful activity from his alleged onset date, September 1, 2005, through his date last insured, June 30, 2008. Tr. 10. At step two, the ALJ concluded that Mr. Vinyard's ankylosing spondylitis was a severe impairment. Tr. 10-12. At step three, the ALJ ruled that Mr. Vinyard did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in the regulations. Tr. 12.

The ALJ next assessed Mr. Vinyard's residual functional capacity ("RFC"). The ALJ found that Mr. Vinyard retained the capacity to perform less than a full range of sedentary work, including the following additional limitations:

> He can stand and walk for two of eight workday hours and sit for six of eight workday hours. He can lift and carry 10 pounds frequently and 20 pounds occasionally. He can occasionally climb ramps and stairs, but he can never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He must avoid concentrated exposure to hazards.

*Id.* At step four, the ALJ determined that Mr. Vinyard's RFC rendered him unable to perform his past relevant work. Tr. 18. At step five, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Mr. Vinyard could perform jobs that exist in significant numbers in the national economy. Tr. 18-19. Thus, the ALJ found Mr. Vinyard not disabled. Tr. 19-20.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by

isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th

Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation

marks omitted)). The reviewing court, however, may not affirm the Commissioner on a ground

upon which the Commissioner did not rely. *Orn,* 495 F.3d at 630; *see also Bray,* 554 F.3d

at 1226-26 (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947)).

## DISCUSSION

Mr. Vinyard argues that the ALJ erred by: (1) improperly rejecting limitations offered by

Drs. Fields and Ramsthel; (2) improperly rejecting his subjective symptom testimony; and

(3) failing to consider his nonsevere impairments.[2]

## A.  Medical Evidence

Mr. Vinyard argues that the ALJ improperly rejected discrete limitations offered by

Drs. Fields and Ramsthel. The Ninth Circuit distinguishes between the opinions of three types of

physicians:  treating physicians, examining physicians, and non-examining physicians. The

opinions of treating physicians are generally accorded greater weight than the opinions of non-

treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's

opinion that is not contradicted by the opinion of another physician can be rejected only for

"clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If a

treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must

provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. *Murray v.

Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). In addition, the ALJ generally must accord greater

weight to the opinion of an examining physician over that of a non-examining physician.  *Lester*,

---

[2] The Court commends both parties in this case. Plaintiff argued three specific and
concise assignments of error—his best arguments— and refrained from challenging every
discrete issue. The Court also appreciates the Commissioner's conversion of the exhibit numbers
in the ALJ's decision to transcript pages. *See, e.g.*, Def.'s Resp. at 9.

81 F.3d at 830. As is the case with the opinion of a treating physician, the ALJ must provide

"clear and convincing" reasons for rejecting the uncontradicted opinion of an examining

physician. *Pitzer v. Sullivan*, 908 F.2d 502 at 506 (9th Cir. 1990). If the opinion of an examining

physician is contradicted by another physician's opinion, the ALJ must provide "specific,

legitimate reasons" for discrediting the examining physician's opinion. *Lester,* 81 F.3d at 830.

### 1. Dr. Fields

Dr. Scott Fields treated Mr. Vinyard from April 2010 through, at least, April 2011.

Tr. 16. On February 24, 2011, Dr. Fields opined, among other things, that Mr. Vinyard must

"change body position or posture to lessen otherwise intractable pain" every 30 minutes. Tr. 688.

On April 5, 2011, however, Dr. Fields submitted a second, identical opinion form that did not

include any restriction regarding Mr. Vinyard's need to shift positions. Tr. 697. The ALJ

summarized both of Dr. Fields' opinions and gave them "considerable weight," relying, in part,

on Dr. Fields' position as Mr. Vinyard's treating physician. Tr. 16.

Mr. Vinyard argues that despite the ALJ's apparent acceptance of Dr. Fields' opinions,

the ALJ erred by tacitly rejecting his need to shift positions every 30 minutes. Pl.'s Br. at 18. The

Commissioner argues that the Court may infer the ALJ rejected the position-shifting restriction

from Dr. Fields' February 2011 opinion in favor of the less restrictive, and more recent, April

2011 opinion. Def.'s Br. at 9.

When an ALJ does not explicitly reject a physician's opinion, a court may nevertheless

affirm a tacit rejection by drawing "specific and legitimate inferences" from the ALJ's decision.

*See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). Here, however, even if the ALJ

intended to reject the limitation in Dr. Fields' earlier opinion, the ALJ would have erred in doing

so. The instructions to the disability forms submitted by Dr. Fields in February and April 2011

expressly state: "If you receive multiple [forms], *please disregard repetitive questions*." Tr. 685, 694 (emphasis added). Although it is possible that Dr. Fields intended to omit a shifting-position restriction in his April 2011 opinion, Dr. Fields skipped the question, rather than checking the box marked "No." Tr. 697. In accordance with the form's instructions, Dr. Fields likely did not intend to omit a shifting-position limitation that he previously included in the prior form. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) (holding a court must uphold an ALJ's *rational* interpretation of the evidence). As such, the ALJ erred by not explicitly discussing his reasons for rejecting Dr. Fields' shifting-position restriction or by failing to incorporate that restriction into the RFC.

### 2. Dr. Ramsthel

On October 11, 2008, Dr. Donald Ramsthel assessed Mr. Vinyard's physical abilities secondary to his ankylosing spondylitis. Tr. 399-402. Dr. Ramsthel opined that Mr. Vinyard could "be on his feet, either walking or standing, for 30-45 minutes at a time, translating into at least 3 hours in an 8-hour day," and he could sit "30-45 minutes [at a time], translating into 3-4 hours in an 8-hour day." Tr. 402.

The ALJ summarized Dr. Ramsthel's opinion as finding that Mr. Vinyard can "stand and walk for three of eight workday hours and sit for three to four of eight workday hours." Tr. 17. The ALJ accorded Dr. Ramsthel's opinion "some weight." *Id.* Noting Mr. Vinyard and his mother's apparently contradictory testimony, the ALJ found the evidence supported a greater capacity to sit. *Id.* This lesser restriction is reflected in the RFC, which limits Mr. Vinyard to sitting for "six of eight workday hours." Tr. 12.

Mr. Vinyard argues that the ALJ's reasoning is flawed because the ALJ did not inquire whether Mr. Vinyard sat in a manner incompatible with a work environment by sitting, for

example, with his legs elevated. Pl.'s Br. at 18. The Commissioner argues that the ALJ offered a rational interpretation of conflicting medical evidence, which must be upheld. Def.'s Br. at 11-12.

In *Batson*, the court was confronted with an adverse credibility finding based, in part, on the ALJ's assumption that the claimant would be capable of sustained work because he testified to sitting while watching television for six to ten hours per day. *See Batson*, 359 F.3d at 1197. Although the court upheld the ALJ's credibility finding on other grounds, the court specifically noted that "[t]he assumption [the claimant] watched television while sitting is not confirmed by the record." *Id.* Similarly, the record here does not reveal whether Mr. Vinyard sat in a manner compatible with sedentary work; indeed, Mr. Vinyard's testimony reveals that he changes positions regularly when he was watching television. *See, e.g.*, Tr. 77 ("I'll sit for a minute and then, you know, it starts to hurt me one way, I'll lay down."). As such, the ALJ's interpretation of the evidence was not reasonable, and the ALJ erred in relying on Mr. Vinyard's television watching to partially discredit Dr. Ramsthel's opinion.

In addition to the issue raised by the parties, the ALJ did not refer to Dr. Ramsthel's opinion that Mr. Vinyard's ability to stand, walk, and sit is further limited to 30 minute to 45 minute blocks—effectively a shifting-position limitation. Tr. 402. This limitation is co-extensive with the limitation assessed by Dr. Fields in 2011. *Compare* Tr. 402, *with* Tr. 688. As such, the ALJ's omission of this limitation was error.

In sum, the ALJ erred in omitting Dr. Fields' shifting-position limitation and in giving Dr. Ramsthel's opinion only partial weight.

**B.  Credibility**

Mr. Vinyard also argues that the ALJ did not provide specific reasons for rejecting particular limitations described in Mr. Vinyard's testimony. The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third

parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Applying the first step of the credibility framework, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 13. In applying the second step, however, the ALJ found that "the claimant's statements concerning intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." *Id.* In support of this, the ALJ offered several specific reasons: (1) inconsistent activities of daily living; (2) past work history demonstrating a poor motivation to work; (3) substance abuse and non-compliance

with treatment demonstrating a poor motivation to improve; (4) conservative medical treatment; and (5) inconsistent statements. Tr. 14-16.

At the hearing, Mr. Vinyard testified that even if he were able to alternate sitting and standing, he could do so only for two hours. Tr. 78. He also testified that he could sit for one hour and stand for one hour.[3] Tr. 73. Mr. Vinyard does not challenge the substance of the ALJ's credibility finding. Pl.'s Br. 19-21. Instead, Mr. Vinyard argues that the ALJ failed to provide specific reasons for rejecting this particular testimony. *Id.* at 19.

Although the ALJ did not explicitly reference Mr. Vinyard's testimony regarding his need to shift positions, the ALJ addressed similar testimony when discussing the examination conducted by Dr. Kim Webster. *See* Tr. 13. The ALJ noted that Mr. Vinyard reported to Dr. Webster that "he could sit for one hour, [and] stand 30 minutes." *Id.* As such, even if the ALJ did not refer directly to Mr. Vinyard's hearing testimony, the decision shows the ALJ considered an even more restrictive report of limitations.

Mr. Vinyard also argues that the ALJ provided "several reasons why he, in general, thought that Plaintiff's limitations were not as severe as he alleged, but it is not enough for an ALJ to reject all of a Plaintiff's testimony in one blanket statement." Pl.'s Br. at 20. In *Dodrill*, the court held "[i]t's not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill*, 12 F.3d at 918. In that case, the ALJ's credibility finding amounted to little more than a statement that "there was little or nothing in the record to support [the claimant's] claims." *Id.* Here, in contrast, the ALJ not only discussed Mr. Vinyard's testimony, he offered

---

[3] Mr. Vinyard describes his testimony as being able to "sit for an hour or stand for a half hour. (Tr. 73, 78)." The Court's review of the cited pages, however, shows Mr. Vinyard testified to the ability to stand for one hour. Tr. 73 (responding to a question about how long he could stand with "probably an hour, an hour, tops."); Tr. 78 ("I can probably stand for an hour.").

several reasons why the testimony was not credible. Despite Mr. Vinyard's characterization, the ALJ did much more than reject his "testimony in one blanket statement." *See* Tr. 14-16. Moreover, the ALJ's findings not only highlight why Mr. Vinyard may not have been an accurate historian—inconsistent statements—but also demonstrate why his activities of daily living and receipt of medical treatment contradict his testimony. *Id.* As such, the "findings [are] sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the claimant's] testimony." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Although Mr. Vinyard does not challenge the ALJ's reasons for finding him not credible, the Court has independently reviewed those reasons and finds them without error. The ALJ relied on several grounds in finding Mr. Vinyard not credible, including, *inter alia*, his inconsistent activities of daily living, inconsistent testimony, and a sparse work history. Tr. 14. As the ALJ noted, despite Mr. Vinyard's subjective complaints, he was able to live an active life. *See, e.g.*, Tr. 526, 556, 599 (reports hunting, including sitting in a tree stand for "a prolonged period," hiking in the mountains, fishing, and landscaping). Mr. Vinyard also showed a poor propensity to work prior to his alleged onset date. *See* Tr. 192 (recording sporadic earnings over his life, only exceeding $5,000 in 7 of 21 years since he turned 21). Finally, the ALJ noted inconsistencies in Mr. Vinyard's testimony and medical records that hurt his credibility. *Compare, e.g.*, Tr. 74 (reporting not drinking alcohol in years), *with* Tr. 458 (reporting "he is [an] alcoholic and still drinks occasionally at concerts). These reasons were clear and convincing and supported by substantial evidence. *See Thomas*, 278 F.3d at 959 (holding that substantial evidence includes a limited work history, contradictory activities of daily living, and contradictory statements); *Orn*, 495 F.3d at 639 (holding that contradictory activities of daily living may be a clear and convincing reason); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th

Cir. 1997) (An ALJ may consider "inconsistencies either in [the claimant's] testimony or

between his [or her] testimony and his [or her] conduct."); Although the Court has not discussed

the other reasons offered by the ALJ for finding Mr. Vinyard not credible, even if the ALJ erred

in relying on those reasons, the Court may still affirm his credibility finding because it is

nevertheless supported by substantial evidence. *See Batson*, 359 F.3d at 1197. As such, the

ALJ's credibility finding is affirmed.

## C. Nonsevere Impairments

Mr. Vinyard also argues that the ALJ erred by failing to consider his nonsevere

impairments when formulating his RFC. The RFC is defined as the most that a claimant can do

despite his or her limitations. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). In determining the

RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those

that are not severe; the ALJ evaluates "all of the relevant medical and other evidence," as well as

a claimant's testimony, in making this assessment. SSR 96-8p, *available at* 1996 WL 374184; 20

C.F.R. §§ 404.1545(a)(1); 416.945(a)(1); *see also Robbins*, 466 F.3d at 883. Limitations

supported by substantial evidence in the record must be incorporated into the RFC. *See

Osenbrock v. Apfel*, 240 F.3d 1157, 1164–65 (9th Cir. 2001).

Mr. Vinyard argues that although the ALJ found the impairments fibromyalgia and

depression nonsevere, the ALJ "improperly failed to consider the effects of [those] impairments"

on the RFC. Pl.'s Br. at 21. Mr. Vinyard does not make any specific argument how the ALJ"s

inclusion of those impairments would have altered the RFC. Indeed, in Mr. Vinyard's entire

brief, he mentions fibromyalgia once and depression twice. *See id.* at 8, 21. A court only

considers those "issues which are argued specifically and distinctly in a party's opening brief."

*Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994). Mr. Vinyard's bare recitation of these two nonsevere impairments is insufficient.

Further, a review of the record does not reveal any deficiency in the RFC made by excluding limitations secondary to depression or fibromyalgia. On March 21, 2009, Dr. John Ellison diagnosed Mr. Vinyard with, *inter alia*, chronic depression. Tr. 460. Despite that diagnosis, Dr. Ellison's examination notes do not reflect any limitations from, or symptoms of, depression. *See* Tr. 459 (noting normal affect, friendly cooperative behavior, a normal conversation tracking). This evidence is consistent with the opinion of Dr. Dorothy Anderson, a consultative examiner, who concluded that Mr. Vinyard's mental functioning limitations were nonsevere and not fully credible. Tr. 451. Indeed, Mr. Vinyard did not report mental health limitations in his submissions to the state agency. *See* Tr. 428 ("[Mr. Vinyard] does socialize. . . . [H]e is grouchy from pain. [He] alleges all exertional activities are limited by muscle spasm and pain med[ications.] He is able to follow instructions."). As such, there are no functional limitations relating to depression or fibromyalgia that the ALJ failed to incorporate into the RFC.

**D. Remand**

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir 2004)). The

court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871 876 (9th Cir. 2003) (citing *Bunnell*, 947 F.2d at 348 (*en banc*)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

As discussed above, the ALJ erred in rejecting the shifting-position limitation endorsed by Dr. Fields and by according Dr. Ramsthel's opinion only partial weight. There are, however, issues that must be resolved prior to the award of benefits. It is not clear from the record what effect the inclusion of the erroneously omitted limitations will have on Mr. Vinyard's capacity to work. The VE's testimony touches on, but does not directly address, the limitations proposed by Drs. Fields and Ramsthel. For example, the VE testified that a claimant who "could only alternate sitting and standing for, say, less than eight hours" would be unable to maintain competitive employment. Tr. 86. This testimony does not, however, address whether Mr. Vinyard's constant need to shift positions over an eight hour workday would preclude competitive employment. Further, the opinions of Drs. Fields and Ramsthel are contradicted by other medical opinions in the record, which the ALJ may assess. *See, e.g.*, Tr. 464 (Dr. Westfall

concluding that Mr. Vinyard can stand for two hours and sit for six hours in an eight hour workday). As such, on remand, the ALJ should reassess the opinions of Drs. Fields and Ramsthel; recalculate Mr. Vinyard's RFC to include any additional limitations supported by substantial evidence, and take the testimony of a VE based on the new RFC.

## CONCLUSION

The Commissioner's decision that Mr. Vinyard is not disabled is not based on substantial evidence; it is therefore REVERSED and REMANDED for further proceedings consistent with this opinion.

DATED this 28th day of May, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge